GARLAND COUNTY *v.* HOT SPRING COUNTY.

Opinion delivered April 7, 1900.

1. FINDING OF FACTS—CONCLUSIVENESS.—Findings of facts, made by a trial judge sitting as a jury, are conclusive on appeal if based on evidence. (Page 89.)

2. JUDGMENT—WHO BOUND BY.—Where a county is formed partly of territory detached from another county, and a subsequent act of the

legislature makes the former county liable for such part of the latter county's indebtedness existing at the date of formation of the former county as would be a fair apportionment to the citizens of the territory detached from the latter county and attached to the former, a judgment against the latter county for a debt antedating the formation of the former county will be binding on the former county, and cannot be collaterally attacked, even if erroneous in the amount of interest recovered. (Page 91.)

3. STATUTE—PAROL EVIDENCE AS TO INTENT.—Parol evidence that the legislature, in detaching certain territory from a county and attaching other territory thereto, intended that the addition of the latter territory should compensate for the loss of the former is inadmissible, as the intent of the legislature must be derived from the act itself. (Page 92.)

4. NEW COUNTY—LIABILITY TO PARENT COUNTY.—Where a county, from which another county was in part created, was subsequently compelled by mandamus to pay an indebtedness for which the latter county was in part liable, the latter county will not be liable for any of the costs of such proceeding, nor for any part of the costs of collecting a tax to pay such judgment. (Page 92.)

5. COUNTY—LIABILITY FOR INTEREST.—Counties are not liable for interest on their debts. (Page 93.)

Appeal from Garland Circuit Court.

JOHN FLETCHER, Special Judge.

STATEMENT BY THE COURT.

This is a suit by Hot Spring county against Garland county for that part of the indebtedness of Hot Spring county, for which that part of Garland county taken from Hot Spring county was liable.

The findings and judgment of the court were as follows.:

"This cause coming on to be heard *de novo* upon the appeal being taken by Hot Spring county from the order and judgment of the Garland county court dismissing her claim filed under the provisions of the act of the general assembly approved March 1, 1897, when Hot Spring county appeared by her attorney, James P. Clarke, Esq., and Garland county by her attorneys, Greaves & Martin and Wood & Henderson, and the court, having heard the evidence and the argument of parties, as well as the argument of counsel for the respective parties, doth find as follows:

"1.   That Garland county was formed under authority of

an act of the general assembly approved April 5, 1873, and of
territory taken in part from Hot Spring county; that the part
so taken constituted on said 5th day of April, 1873, 38.5 per
cent. of the assessed value of all the property, real and personal,
liable to taxation in Hot Spring county; that the said act of
April 5, 1873, made no provision for the assumption by Gar-
land county of the existing indebtedness of any of the coun-
ties from which territory and inhabitants were taken in the
formation of said county.

"2.    That on March 1, 1897, the general assembly passed
an act making Garland county liable for such part of the in-
debtedness of Hot Spring county existing on the 5th day of
April, 1873, as would be a fair apportionment to the citizens
of the territory detached from Hot Spring county and at-
tached to Garland county.

"3.    That on said 5th day of April, 1873, Hot Spring
county was indebted on account of ordinary warrants in the
sum of $4,957.26.    That on the 12th day of February, 1873,
the county court of that county entered into a contract
with one E. A. Nickels for the erection of a court house
at Rockport, in said county, under the terms of which
contract the contractor was to receive, on the execu-
tion by him of said contract, and a bond for the proper
compliance on his part, $22,000 in the bonds of said county,
and when said court house had progressed to completion to
the extent of two-thirds he was to receive $10,000 of said bonds
additional, and upon its completion he was to receive $11,000
more, being the entire price named in said contract. About the
date of the execution of the contract and the filing of his bond
in the middle of February, 1873, the said Nickels received from
the designated depository $22,000 in the bonds of the county,
the said bonds being for $100 each and numbered 1 to 220,
both inclusive, and bearing interest at the rate of ten per cent.
per annum, payable annually, from the date thereof on the de-
livery of the interest coupons attached; that the court house
never reached a stage of completion to the extent of two-
thirds.    That $10,000 of said bonds, in addition to said $22,-
000 thereof, were, notwithstanding said failure to so partially

complete said court house, issued, so that the same became and were enforced as liability against said Hot Spring county; these last-named bonds being in denomination of $100 each, and numbered from 221 to 320 both inclusive."

"4.   That said last-mentioned bonds, so numbered from 221 to 320, both inclusive, were not issued and delivered so as to constitute a part of the indebtedness of Hot Spring county on April 5, 1873.

"5.   That the validity of all of said bonds was disputed by Hot Spring county; and after litigation between said county and the holders of a part thereof as to the liability of said county on said bonds, the same, by the judgment of the United States circuit court for the Eastern district of Arkansas, were declared to be a valid liability of the county at the date of its said several judgments, these said judgments being entered subsequent to January 1, 1876.   Judgment against said county on the account of the principal and interest of said bonds numbered from 1 to 220 for the aggregate sum of $45,191.37, and the county from time to time raised taxes under mandamus proceedings in the court in which said judgments were rendered, and paid on account of said judgments, and the interest thereon, the aggregate sum of $45,191.37, and, in addition thereto, paid the sum of $450 as costs that accrued in defense of said actions; and in the recovery of said judgments on the debt mentioned as bonds from 1 to 220 the county also paid in said actions on said bonds and the coupons thereof, as costs in the mandamus proceedings taken by the plaintiffs in said judgments to compel the levy and collection of taxes with which to satisfy said judgments and the interest thereon, the sum of $450; and also to the county collector for collecting the taxes to pay said judgments the sum of $1,335.75 as commissions allowed to him under the law; and to the county treasurer for receiving and disbursing said taxes to the custodian entitled to receive same $903.82, and to the clerk of the United States circuit court as poundage for receiving said fund to the several plaintiffs entitled thereto the sum of $451.90.

"6.   That judgments were also recovered in said court against Hot Spring county upon the $10,000 in bonds num-

bered from 221 to 320 for the aggregate sum, on account of principal and interest thereof, of $20,148.63. That the costs of recovering said judgments were $450, the costs of mandamus proceedings therein were $450, the collector's commission $604.44; the county treasurer's commission $402.96; the poundage of the clerk of the United States court $201,48. That all of the judgments rendered against Hot Spring county on account of said bonds and interest on said judgments and all costs have been fully paid off by said county.

"7. That on the 5th day of April, 1873, Hot Spring county was also indebted on account of obligations known as jail bonds to the extent of principal and interest of $1,400, which has been fully paid off.

"8. That on said 5th day of April, 1873, there was in that part of the territory not taken to form Garland county a jail building of the value of $3,600. That there were no other buildings or property belonging to said county which remained in said county after said date, of value to said Hot Spring county."

"9, Of the ordinary county warrants outstanding on the 5th day of April, 1873, there was recovered against Hot Spring county, on account thereof, judgments for $827.26, for principal, and $243.42 for interest thereof, on account of which said judgments and the interest thereon and cost of recovery said county paid the aggregate sum of $1,115.68.

"The court thereupon declares that Hot Spring county is entitled to recover from Garland county 38.5 per cent of the aggregate sum of outstanding warrants, diminished by the sum included as principal in judgments on said warrants; the amount paid on account of said warrants, and the interest thereon so included in judgments, together with interest on said judgments, and the costs of recovery; the sum of all payments made on account of judgments for principal and interest of bonds from 1 to 220 both inclusive, and interest on the said judgments and cost of recovery. No interest being allowed to Hot Spring county on any payment made by her subsequently to the date of making such payment on account of said judgment, nor will costs that accrued in any mandamus

proceeding taken by any of the plaintiffs in any of said judgments to secure the levy and collection of a tax with which to pay off said judgment be allowed to form a part of the claim upon which the liability of Garland county shall be computed, nor collector's commissions for collecting such taxes, nor treasurer's commissions for receiving and paying of same, nor poundage to the clerk of the United States circuit court for receiving and disbursing sums paid him in satisfaction of said judgments. The aggregate indebtedness thus shown shall be diminished as of the 5th day of April, 1873, by the value of the jail building in Hot Spring county $3,600. No liability rests upon Garland county for any part of the principal or interest of the bonds numbered from 221 to 320 both inclusive.

"It is therefore by the court considered, ordered and adjudged that Hot Spring county do have and recover of and from Garland county the sum of $18,880.41 and all her costs in this behalf expended. And the clerk of this court will certify a copy of this judgment to the county court of Garland county, and the said court is hereby ordered to enter the same upon its records, as the judgment of that court in this cause, and that said court cause to be issued in satisfaction thereof warrants on the treasurer in accordance with the act of March 1, 1897."

Each side excepted to the findings of fact and declarations of law, and appealed.

*Wood & Henderson* and *Greaves & Martin*, for appellant.

It was error for the court to refuse to consider the tax books in evidence. Garland county was not responsible for interest and costs accruing on the Hot Spring county debt, after its formation. The legislature not having imposed any such responsibility, the presumption is that it believed nothing was due. 92 U. S. 307. The board of supervisors had power to compromise and settle the suit with the contractor for the court house. Gantt's Dig. § 595 and notes. And the county is bound by its action. Herm. Est. § 435. Appellant county is liable for only such equitable proportion of the debt as can be established by evidence, taking into consideration the value of county property retained by the old county. 52 Ark. 430. Interest must be authorized by statute. 11 Am.

& Eng. Enc. Law, 379–80. Interest is not allowable on claims against counties. 51 Miss. 807; 64 Miss. 534; 13 Ore. 287; 55 Tex. 314.

*Jas. P. Clarke,* for appellee.

The appellant fails to properly present to this court any of the matters alleged as errors in the findings of law and facts. 65 Ark. 285; 60 Ark. 250. Appellee is not estopped to insist upon appellant's liability to her for her ratable share of. the court house debt, by the so-called decree. The decree, if binding on one, binds both, and fixes on appellant the liability of which it sought exoneration. 62 Miss. 325; 120 U. S. 517. The court erred in finding that the bonds numbered 221 to 320 were not issued and delivered so as to constitute a part of the indebtedness of Hot Spring county on April 5, 1873. 62 Miss. 337. Appellant can not escape liability on the second $10,000 of bonds merely because the date upon which they got out is uncertain. The burden will be divided. 48 Ark. 453. Appellant is seeking equity, and must do equity. Bishp. Eq. § 43; 17 Md. 212. The court erred in declaring that appellee was not entitled, as against appellant, to interest upon payments made to satisfy debts existing on April 5, 1873, down to date of judgment adjusting the indebtedness. 51 Ark. 350; 163 U. S. 440; 136 U. S. 211; 5 L. C. P. Ed. U. S. Rep. 693n.; 21 Ark. 329; 73 Wis. 211. Even after the separation of the counties all were to be treated as citizens of the old county for the purpose of adjustment of its debts. 107 N. C. 300. Each county must share the payments and all interest and costs. 2 Rich. Eq. 15; 4 J. J. Marsh. 463; 17 Me. 64; 14 Ired. Eq. 209; 45 Fed. 445; 5 Rawle, 1068; 7 Mass. 169; 3 Strobh. 184; 23 Vt. 581; 18 *ib.* 150; 50 Ark. 416; 12 Ark. 125; 57 Ark. 125.

HUGHES, J., (after stating the facts.) The judgment of the circuit court sufficiently states the facts in this case, without further statement of them by this court.

The cause was tried before the Hon. John Fletcher, a special judge, sitting as a jury, and the findings of facts by the court, where there is evidence upon which they might be sustained,

are conclusive upon this court. We therefore consider these findings of facts first.

We take it that there is no serious question upon the evidence or doubt that the bonds of Hot Spring county for $22,-000, numbered from 1 to 220, both inclusive, were issued, and became a part of the indebtedness of Hot Spring county prior to the 5th of April, 1873, when the act was passed for the formation of Garland county out of territory taken from Hot Spring and other counties. While it seems not to be so certain that the bonds numbered from 221 to 320, both inclusive, were not issued till after the 5th of April, 1873, still there is some evidence to support the finding of the circuit court that said bonds were not issued and delivered so as to constitute a part of the indebtedness of Hot Spring county till after April 5, 1873. The finding therefore must stand as to this. The finding that the territory taken from Hot Spring to form part of Garland county constituted on the 5th of April, 1873, 38.5 per cent. of the assessed value of all the real and personal property liable to taxation in Hot Spring county is supported by the evidence in the case. We cannot disturb this finding, nor the finding of the court that the value of the jail remaining in Hot Spring county after the 5th of April, 1873, was $3,600. The fact that it cost originally more than that is not evidence of its value on the 5th of April, 1873. We think the facts and circumstances as proved sustain the court's finding as to its value; at all events, it is not without some evidence in the record to sustain it.

The court found that the court house in Hot Spring county had been one-third completed on the 5th of April, 1873, and that it was of no value to Hot Spring county. The evidence shows that the court house was never turned over to Hot Spring county, but that it was sold in its unfinished condition to Emmerson and another, under a mortgage, and was torn down, and the material removed.

But, says the counsel for Garland county, Hot Spring county, through her board of supervisors, prevented the building of the court house to completion by releasing the contractor, and cancelling the contract; but for this the court house would

have been completed, and Hot Spring county would have had it when completed. But the evidence tends to show that, owing to the condition of things in Hot Spring county, the court house, had it been completed, would have been of nominal value only, at most, to the county. A movement was pending to change the county site of Hot Spring county from Rockport to Malvern in said county, Malvern being on the St. Louis, Iron Mountain & Southern Railway, while Rockport was off the line of said railroad, then approaching completion through Hot Spring county. It was a foregone conclusion that the county seat would be moved from Rockport to Malvern, which was soon afterwards done.

In reality it seems that this decree releasing the sureties on the bond of the contractor Nickles was a nullity, for Hot Spring county was not a party to the proceedings in which this was done, as we think the record shows. This seems to have been an effort to rid the county of Hot Spring of these bonds, for the decree, while it purported to release Nickels and his sureties, directed the delivery of all the bonds issued and put in circulation, and the cancellation thereof, which however was never done.

We are of the opinion that there was no error in the finding of the court that the court house was of no value to Hot Spring county. If it can be said that this decree bound Hot Spring county, it also bound Garland county, for Hot Spring stood for and represented Garland county, so far as the territory in Garland that was taken from Hot Spring county is concerned. *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Clay County,* 62 Miss. 325.

The judgments of the United States circuit court against Hot Spring county settled the validity of these bonds, and the rate of interest recoverable upon them, and cannot be collaterally attacked, even if erroneous in the amount of interest recovered against Hot Spring county. *Chollar* v. *Temple,* 39 Ark. 238. Garland county is bound by these judgments. She was represented by Hot Spring county. *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Clay County,* 62 Miss. 325.

These judgments are *res judicatae*, and estop both Hot Spring and Garland counties. 1 Herman on Estoppel §§ 53, 54, 348, 349.

The evidence of Latta and Sumpter that the territory taken from Clark and Montgomery counties, and attached to Hot Spring county when Garland county was established, was intended by the legislature as a compensation to Hot Spring county for territory taken from Hot Spring county and attached to Garland county, was properly excluded by the circuit court. The act of the legislature speaks for itself, and the intention is derived from a construction of the act by the courts. There was no error in refusing to allow Garland county credit for territory taken from Clark and Montgomery counties and attached to Hot Spring county at the time of the formation of Garland county. Why Garland county should claim credit on this account we are unable to see.

It is not insisted that the act under consideration is unconstitutional, though this is made the third ground of the motion for a new trial by Garland county. It is waived in the argument of counsel, conceding that the constitutionality of the act was settled by this court in *Perry County* v. *Conway County*, which we think is correct (52 Ark. 430).

The appellee, in its second assignment of error in its motion for a new trial, says "that the court erred in refusing to include in the sum of the indebtedness part of which Garland county was, by the general assembly, made liable to pay, the costs incurred in the United States circuit court in mandamus proceedings to compel levy of taxes with which to pay judgments on causes of action, which the court in this case held to be such indebtedness as said Garland county was so liable to discharge in part." Hot Spring county might have arranged to meet her indebtedness without being compelled by mandamus, and it was no fault of Garland county that she had to be compelled by mandamus to do so. The court did not err in holding that Garland county was not liable for part of the costs of these mandamus proceedings, or for poundage paid the clerk of the United States court, or the fees paid the tax collector and treasurer of Hot Spring county for collecting and paying out.

In the sixth assignment of error in appellee's motion for a new trial it is said "that the court erred in refusing to allow interest to Hot Spring county on that part of the indebtedness for which Garland county is now adjudged to be liable from the dates upon which Hot Spring county made the several payments that paid and discharged the same down to the date of the judgment of this circuit court adjusting the indebtedness between Hot Spring county and Garland county. We think there was no error in this ruling. Debts against counties do not bear interest as matter of law. There is no statute allowing interest on such debts in this state, and it seems that interest was not allowed at common law. 11 Am. & Eng. Enc. Law, 379, 380; Perley on Interest, 65 (1) and cases cited; 11 Am. & Eng. Enc Law (1 Ed.), 388d, note 3, and 389 note 1.

The judgment of the circuit court is in all things affirmed.